IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

|  |  |  |
|---|---|---|
| MARY JANE VEA AUVAA, an individual; JOSHUA AUVAA, an individual; TEINE AUVAA, an individual; DAVID MICHAEL GARN, | ) ) ) ) ) | Civil No. 2:06-CV-0684BSJ |
| Plaintiffs, | ) ) | **MEMORANDUM OPINION & ORDER** |
| vs. | ) ) | |
| THE CITY OF TAYLORSVILLE, a Municipal Government of the State of Utah, LORENZO K. MILLER, an individual, LOHRA L.MILLER, an individual, and MILLER & MILLER LAW OFFICES, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

```
┌─────────────────────────────────┐
│            FILED                 │
│   CLERK, U.S. DISTRICT COURT     │
│     March 27, 2007 (2:56pm)      │
│        DISTRICT OF UTAH          │
└─────────────────────────────────┘
```

* * * * * * * * *

The plaintiffs brought this action under 42 U.S.C.A. § 1983 (2003),[1] seeking declaratory and injunctive relief, costs and attorney's fees against the City of Taylorsville and two attorneys who act as independent contractors on behalf of the City in conducting criminal prosecutions in the Taylorsville Justice Court and Third District Court. The defendants have moved to dismiss plantiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that (1) the plaintiffs do not allege direct participation in wrongful conduct by defendants Lohra Miller, Miller & Miller Law

---

[1] 42 U.S.C.A. § 1983 reads in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . .

Offices, or the City of Taylorsville; (2) defendant Lorenzo Miller is shielded from civil liability

by the doctrines of absolute prosecutorial immunity and qualified immunity; (3) the plaintiffs

failed to allege a constitutional violation caused by an unconstitutional policy, custom or

procedure on the part of the City for which it may be held liable to these plaintiffs under § 1983;[2]

and (4) the plaintiffs' claims for declaratory and equitable relief are moot in light of intervening

rulings by the Utah Court of Appeals.  In addition, the City of Taylorsville had previously moved

to dismiss on the ground that abstention is required pursuant to *Younger v. Harris*, 401 U.S. 37

(1971).

## BACKGROUND FACTS

Taking the well-pleaded factual allegations of plaintiffs' complaint as true for purposes of

Rule 12(b)(6),[3] and including the contents of those documents referenced in the pleading,[4] this

action arises from a sequence of events involving a criminal prosecution.

Following an incident on March 27, 2005, each of the named plaintiffs was cited and

---

[2]Liability under § 1983 can be imposed on the City only if (1) a constitutional violation occurred, *see City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam), and (2) the violation was caused by a government policy or custom, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  A government policy or custom may be manifested either in the acts of "its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  *Id.* at 694.  *See Walker v. City of Orem*, 451 F.3d 1139, 1152 (10th Cir. 2006); *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).

[3]Under Rule 12(b)(6), all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party.  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  "A 12(b)(6) motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).  The court also "must indulge all reasonable inferences in favor of the plaintiff."  *Curtis Ambulance of Fla., Inc. v. Bd. of County Comm'rs*, 811 F.2d 1371, 1374 (10th Cir. 1987).

[4]*See County of Santa Fe v. Public Service Co. of New Mexico*, 311 F.3d 1031, 1035 (10th Cir. 2002) (in deciding a Rule 12(b)(6) motion, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity") (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002))).

charged with two offenses, Interfering with a Legal Arrest (Utah Code Ann. § 76-8-305) and Riot (Utah Code Ann. § 76-9-101). At the conclusion of a jury trial in the Taylorsville Justice Court, each of the plaintiffs was found guilty of interference, and each was acquitted on the riot charge. The plaintiffs then timely appealed their convictions on the interference charge, seeking a trial *de novo* in the Third District Court. *See* Utah Code Ann. § 78-5-120 (2002).

In the context of the district court trial *de novo*, the prosecution sought to retry these plaintiffs on the riot charge as well as the interference charge, to which they objected on grounds of double jeopardy. The state district court found these objections to be well taken and dismissed the renewed riot charges. The prosecution then sought appellate review of the dismissals,[5] including a petition for a extraordinary writ requiring the Third District Court to proceed against Mary Jane Auvaa and David Garn on both charges.

As the City of Taylorsville now hastens to point out, the Utah Court of Appeals resoundingly rejected its pleas, denying extraordinary relief on the double jeopardy issue. *See Taylorsville City v. Adkins*, 2006 UT App 374, 145 P.3d 1161; Order, dated September 22, 2006, in *Taylorsville City v. Christiansen*, Case No. 20060731-CA (Utah Ct. App.). The Utah Court of Appeals agreed with the district court that retrial of Auvaa and Garn on the riot charge would violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution as that provision applies to the States. *See Bernat v. Allphin*, 2005 UT 1, ¶ 10 n.6, 106 P.3d 707, 711 n.6 ("The Double Jeopardy Clause of the United States Constitution was deemed to be applicable to the states through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784,

---

[5]Such appellate review of the district court's rulings would seem to be unusual, given the express statutory prescription that in criminal proceedings on *de novo* review from the justice court, "[t]he decision of the district court is final and may not be appealed unless the district court rules on the constitutionality of a statute or ordinance." Utah Code Ann. § 78-5-120(7).

794 (1969).").[6]

Following these rulings, Taylorsville avers that it withdrew its opposition to dismissal of the riot charge as against Teine and Joshua Auvaa.  (Memorandum in Support of Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted and for Mootness, filed November 30, 2006 (dkt. no. 13) ("Defs' 11/30/06 Mem."), at 4 ¶ 9, 13.)

Plaintiffs filed this action on August 16, 2006, seeking declaratory and equitable relief against further prosecution on the riot charges in the same Third District Court trial *de novo* proceedings that were the subject of Taylorsville City's writ petitions then pending before the Utah Court of Appeals.  As noted above, the defendants have moved to dismiss.

**DEFENDANTS' MOTION TO DISMISS**

**Defendants Lohra Miller and Miller & Miller Law Offices**

To be held liable under § 1983, a defendant must be shown to be someone who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C.A. § 1983.  As the court of appeals has explained: "Section 1983  is not a vicarious liability provision. . . .  In any § 1983 action, the plaintiff must demonstrate the liability of each . . . official against whom a claim is made," and "the burden is on the plaintiff to develop facts that show the defendant's responsibility for a constitutional violation."  *Serna v. Colorado*

---

[6]As the Utah Supreme Court points out in *Bernat*: "Both the United States and Utah Constitutions prohibit the state from placing an individual twice in jeopardy for the same offense.  U.S. Const. amend. V; Utah Const. art. I, § 12. In jury trials, jeopardy attaches after a jury has been selected and sworn.  *Illinois v. Somerville*, 410 U.S. 458, 466 (1973); *State v. Cram*, 2002 UT 37, ¶ 8, 46 P.3d 230."  *Bernat*, 2005 UT 1, ¶ 10 (footnote omitted); *see* Utah Const. Art. I, § 12 (forbidding that "any person be twice put in jeopardy for the same offense").  Plaintiffs' § 1983 claims are footed on the federal Double Jeopardy Clause, as were the Utah Court of Appeals' rulings that bear upon this case.  *See also Bernat*, 2005 UT 1, ¶ 10 ("Because Petitioners have not provided a separate analysis of the double jeopardy protections afforded under our state constitution, we limit our review to examining the constitutionality of Utah's justice court system under federal law.").

*Dept. of Corrections*, 455 F.3d 1146, 1155 (10th Cir. 2006).

A private actor such as a law firm "cannot be held liable *solely* because it employs a tortfeasor—or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Social Services of New York*, 436 U.S. 658, 691 (1978) (emphasis in original).[7]   Therefore, in order to hold Miller & Miller Law Offices liable for the alleged tortious acts of its agents, the plaintiffs must show that the firm directly caused the constitutional violation by instituting an official policy of some nature that was the "direct cause" or "moving force" behind the constitutional violations.   *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-85 (1986); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985).

A § 1983 plaintiff must show an affirmative link between a defendant's conduct and a constitutional violation, and that affirmative link "must be alleged in the complaint as well as proven at trial."   *Stidham v. Peace Officer Standards And Training*, 265 F.3d 1144, 1157 (10th Cir. 2001).   Here the plaintiffs allege no facts showing any affirmative link between the conduct of Lohra Miller or Miller & Miller Law Offices and any constitutional violation suffered by these plaintiffs; nor do they allege facts that would evidence that Miller & Miller Law Offices had an official policy that was the "direct cause" of any constitutional violation resulting from the alleged conduct of defendant Lorenzo Miller in prosecuting criminal charges against them.[8]

Defendants' motion thus appears to be well taken, and plaintiffs' complaint shall be dismissed as against defendants Lohra Miller and Miller & Miller Law Offices.

---

[7]The Tenth Circuit, along with several other circuits, has rejected vicarious liability in a § 1983 case for private actors based upon *Monell*.  *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003).

[8]Nor does it appear that plaintiffs filed a memorandum in opposition to the defendants' November 30, 2006 motion to dismiss on this ground.

**The City of Taylorsville**

Much the same is true of plaintiffs' § 1983 claims against the City of Taylorsville.  Such a claim "'must demonstrate two elements: (1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation.'"  *Walker v. City of Orem*, 451 F.3d 1139, 1152 (10th Cir. 2006) (quoting *Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998)); *accord Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).[9]  Plaintiffs' pleadings may have alleged a constitutional violation committed by the City's prosecutor, but have "identified no municipal policy or custom the execution of which caused [their] injury, a requirement for claims against municipalities" under § 1983 as construed in *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).  *Johnson v. Johnson*, 466 F.3d 1213, 1215 (10th Cir. 2006).

As pleaded, plaintiffs' § 1983 claims for declaratory and injunctive relief against the City of Taylorsville fail to state a claim upon which relief may be granted, and should likewise be dismissed.

**Absolute Prosecutorial Immunity**

As the Tenth Circuit explained in *Perez v. Ellington*, 421 F.3d 1128 (10th Cir. 2005), when determining whether a defendant is entitled to absolute immunity, courts employ a functional approach that examines "'the nature of the function [the defendant] performed, not the identity of the actor who performed it.'"  *Id.* at 1133 (quoting *Malik v. Arapahoe County Dep't of*

---

[9]These requirements apply regardless of the nature of the relief sought.  *See, e.g.*, *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1210 (10th Cir. 2006) ("[A] municipality can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers,'" or "if a deprivation of constitutional rights is caused by a municipal 'custom.'"(quoting *Monell*, 436 U.S. at 690)).

*Soc. Servs.*, 191 F.3d 1306, 1314 (10th Cir. 1999)).

Counsel asserts that defendant Lorenzo Miller "was acting within the scope of his prosecutorial duties," and that "prosecuting attorneys are absolutely immune from suit under § 1983 for actions taken within the scope of 'prosecutorial duties,'" citing *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976).  (Defs' 11/30/06 Mem. at 6.)[10]  This assertion assumes that absolute immunity extends to private attorneys who contract to serve as municipal prosecutors.

There appears to be some support for the proposition that "[p]rivate attorneys may have prosecutorial immunity in the proper circumstances."  *Niebur v. Town of Cicero*, 212 F. Supp. 2d 790, 824 (N.D. Ill. 2002).  *See, e.g.*, *Hollowell v. Gravett*, 703 F. Supp. 761, 764 (E.D. Ark. 1988) (absolute immunity applies to private attorney hired to prosecute administrative dismissal proceeding against officers of the sheriff's department); *Musso-Escude v. Edwards*, 101 Wash. App. 560, 574, 4 P.3d 151, 159 (2000) ("The steps taken by Edwards are intrinsically within the scope of a prosecutor's duties in initiating and pursuing a criminal prosecution.  It is of no moment that Edwards' services were furnished pursuant to a contract.").  But this court need not

---

[10]The reach of absolute prosecutorial immunity is measured by function rather than by office or title.  Professor Chemerinsky put this principle in succinct terms: "absolute immunity applies to the task, not to the office."

There are several implications from this basic statement that absolute immunity attaches to the task and not to the office. One implication is that others who perform the task can also claim the immunity. . . .  The notion is that since the immunity goes to the task, it does not matter who the individual is performing it.

* * * *

The other implication of this . . . is [w]hen prosecutors are performing non-prosecutorial tasks, they are only entitled to qualified immunity.  If the immunity goes to the task and not to the office, then that explains why the prosecutor who is in a non-prosecutorial role just gets good faith immunity . . . .

Erwin Chemerinsky, *Prosecutorial Immunity (Practicing Law Institute Section 1983 Civil Rights Litigation Symposium)*, 15 Touro L. Rev. 1643, 1644, 1645 (1999).

resolve this question in the context of this case.[11]

In *Imbler*, the Court expressly held "that in initiating a prosecution and in presenting the

State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler*, 424

U.S. at 431.[12]  Indeed, absolute prosecutorial immunity "extends only to liability for damages.

Prosecutors may still be liable for declaratory and injunctive relief." *Martinez v. Winner*,  771

F.2d 424, 438 (10th Cir. 1985).  As Professor Chemerinsky explains:

> [O]ften the availability of absolute immunity depends on the relief sought. This is
> certainly true with regard to prosecutors.  Prosecutors have absolute immunity as
> to claims for money damages, but prosecutors have no immunity as to claims for
> injunctive relief.  Indeed *Ex parte Young* long ago held that prosecutors can be
> sued for injunctive relief.  One of the key ways around the Eleventh Amendment
> is to sue the attorney general in federal court for injunctive relief.  To give
> prosecutors absolute immunity here would create an enormous obstacle to
> applying federal law in the states.

Erwin Chemerinsky, *Prosecutorial Immunity (Practicing Law Institute Section 1983 Civil Rights*

---

[11]Nor must this court determine whether absolute prosecutorial immunity extends to the conduct of prosecuting
attorneys in post-conviction or post-acquittal proceedings, including appeals and retrials.  *See, e.g., Summers v. Sjogren*,
667 F. Supp. 1432, 1434 (D. Utah 1987) (ruling that prosecutor does not lose immunity merely because she was acting in
a post-conviction setting); *Parkinson v. Cozzolino*, 238 F.3d 145 (2d Cir. 2001) ("[I]t is advocacy that garners immunity,
regardless of whether such advocacy occurs at the trial or appellate stage. There can be little doubt that conduct taken
with the goal of affirming a conviction on appeal or obtaining a new conviction on re-trial falls within the 'traditional'
'adversarial' function of a prosecutor.  Appeal and re-trial require prosecutors to perform duties that are 'intimately
associated with the judicial phase of the criminal process.'" (citations omitted)).

[12]The *Imbler* Court reasoned that

> [i]f a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine
> performance of his duties no less than would the threat of common-law suits for malicious prosecution.
> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in
> conducting them in court.  The public trust of the prosecutor's office would suffer if he were
> constrained in making every decision by the consequences in terms of his own potential liability in a
> suit for damages.  Such suits could be expected with some frequency, for a defendant often will
> transform his resentment at being prosecuted into the ascription of improper and malicious actions to
> the State's advocate. . . . .  Further, if the prosecutor could be made to answer in court each time such a
> person charged him with wrongdoing, his energy and attention would be diverted from the pressing
> duty of enforcing the criminal law."

424 U.S. at 424-25 (citations omitted).  Redress for the willful deprivation of constitutional rights by a prosecutor, the
Court explained, could be achieved by prosecution of the offender or by discipline imposed by official state bar
organizations.  *Id.* at 429.

*Litigation Symposium)*, 15 Touro L. Rev. 1645-46 (1999) (footnote omitted) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

Here the plaintiffs seek declaratory and injunctive relief against any retrial in Third District Court on the riot charges for which they were acquitted in the Taylorsville Justice Court, but they do so without pleading a claim for money damages against defendant Lorenzo Miller. As such, the doctrine of absolute prosecutorial immunity finds no application to the claims for relief pleaded by the plaintiffs in this case.

**Qualified Immunity**

"The doctrine of qualified immunity shields public officials . . . from damage actions unless their conduct was unreasonable in light of clearly established law." *Elder v. Holloway*, 510 U.S. 510, 512 (1994). Once a government official asserts qualified immunity as a defense, the plaintiff must show: (1) that the defendant's actions violated a constitutional or statutory right, and (2) that the rights alleged to be violated were clearly established at the time of the conduct at issue. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). If the plaintiffs fail to demonstrate the government official's conduct violated federal law, the court need not determine whether the law was clearly established. *See Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). "The general rule of qualified immunity is intended to provide government officials with the ability 'reasonably [to] anticipate when their conduct may give rise to liability for damages.'. . . Where that rule is applicable, officials can know that they will not be held personally liable as long as their actions are reasonable in light of current American law." *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)).

-9-

There is some authority for the view that qualified immunity insulates private defendants from § 1983 damages liability where they are fulfilling duties under a government contract, thereby fulfilling an official request to perform a governmental function, in contrast to private defendants who invoke state law in pursuit of private ends. *See, e.g., Eagon Through Eagon v. City of Elk City, Okla.*, 72 F.3d 1480, 1489-90 (10th Cir. 1996) (concluding that where a private defendant "was performing a government function pursuant to a government request," she is entitled to qualified immunity).

Like absolute prosecutorial immunity, "[q]ualified immunity applies to claims for monetary relief against officials in their individual capacities, but it is not a defense against claims for injunctive relief against officials in their official capacities. *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993) (citing *Hafer v. Melo*, 502 U.S. 21, 22-23, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991))." *Meiners v. University of Kansas*, 359 F.3d 1222, 1233 n.3 (10th Cir. 2004); *see Hammons v. Saffle*, 348 F.3d 1250, 1257 n.1 (10th Cir. 2003) (stating that "qualified immunity applies only to claims for damages" (citing *Anderson v. Creighton*, 483 U.S. 635, 646 (1987); *Kikumura v. Hurley*, 242 F.3d 950, 962-63 (10th Cir. 2001))).

"An action for injunctive relief no matter how it is phrased is against a defendant in official capacity only; plaintiff seeks to change the behavior of the governmental entity." *DeVargas v. Mason & Hanger-Silas Mason Co., Inc.*, 844 F.2d 714, 718 (10th Cir. 1988) (citing *Scott v. Lacy*, 811 F.2d 1153, 1153-54 (7th Cir. 1987) (per curiam)).[13]

---

[13]The *DeVargas* court explained the official-capacity distinction in these terms:

Suits against public bodies or official-capacity governmental employees will be defended by government lawyers at no cost to the defendants and with no risk of personal monetary loss.  In contrast, an action for damages is against the defendant individually, and if successful will result in

(continued...)

Essentially the same is true of claims seeking declaratory relief.  "[Q]ualified immunity is only an immunity from a suit for damages, and does not provide immunity from suit for declaratory or injunctive relief."  *Hydrick v. Hunter*, 466 F.3d 676, 689 (9th Cir. 2006) (citing *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993)); *Rowley v. McMillan*, 502 F.2d 1326, 1331 (4th Cir. 1974) (qualified immunity "has no application to a suit for declaratory or injunctive relief").

Declaratory and injuctive relief may be granted even where defendants raise valid claims of qualified immunity barring plaintiffs' damages claims.  *See, e.g.*, *Eagon Through Eagon v. City of Elk City, Okla.*, 72 F.3d 1480 (10th Cir. 1996) (declaratory and injunctive relief granted; damages claims against individual defendants dismissed on qualified immunity grounds); *Washington v. Harper*, 494 U.S. 210, 218 (1990) (individual defendants were entitled to qualified immunity; case was allowed to proceed, but only to consider claims for injunctive and declaratory relief under § 1983 as well as state law).  Qualified immunity thus cannot bar the plaintiffs' claims for declaratory and injunctive relief against defendant Lorenzo K. Miller.

### *Younger* Abstention & Double Jeopardy

The *Younger* abstention doctrine is a judicially created bar to federal court interference with ongoing state court proceedings, taking its name from *Younger v. Harris*, 401 U.S. 37

---

[13](...continued)
personal liability.  "[T]he fear of being sued and held personally liable for damages is a far cry from a suit for reinstatement or injunctive relief, which public officials face regularly in the course of performing their duties." *Bever*, 724 F.2d at 1091 n.4 (Hall, J., dissenting).  Further, individuals who are sued for damages may face the threat of punitive damages and likely will have to undergo the additional expense of retaining counsel.  *De Abadia*, 792 F.2d at 1189-90; *Kennedy*, 797 F.2d at 306; *Tubesing*, 742 F.2d at 404 n.3.  This personal liability will deter qualified individuals or business entities from performing work for the government in a way that threats of injunctive relief will not. *See Harlow*, 457 U.S. at 814, 102 S.Ct. at 2736, *De Abadia*, 792 F.2d at 1190.

*DeVargas*, 844 F.2d at 718.

(1971).[14]  Under the *Younger* doctrine, "[e]ven when a federal court would otherwise have

jurisdiction to hear a claim, the court may be obliged to abstain when a federal-court judgment on

the claim would interfere with an ongoing state proceeding implicating important state interests."

*D.L. v. Unified School Dist. No. 497*, 392 F.3d 1223, 1227-28 (10th Cir. 2004).[15]

This notion that state courts should remain free from federal court intervention derives

from the limited nature of equity jurisdiction and the belief that our federal system operates most

effectively when the states and their political subdivisions are left alone.  *Younger*, 401 U.S. at

43-44.  Younger abstention arises from a desire to "'avoid undue interference with states'

conduct of their own affairs.'"  *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999)

(quoting *Seneca-Cayuga Tribe v. Oklahoma*, 874 F.2d 709, 711 (10th Cir. 1989)).  "*Younger*

abstention is, in essence, a doctrine founded on comity . . . ."  *Southwest Air Ambulance, Inc. v.*

*City of Las Cruces*, 268 F.3d 1162, 1178 (10th Cir. 2001).

Under *Younger* and its progeny, federal courts should not interrupt ongoing state criminal

---

[14]In *Younger*, the Supreme Court held that a federal court should not enjoin a pending state criminal proceeding unless an injunction is necessary to prevent great and immediate irreparable injury.  401 U.S. at 43-45.  *Younger* rests on "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."  *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).

[15]Indeed, federal courts must abstain pursuant to *Younger* when: "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."  *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003); *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).  If these three conditions exist, abstention is mandatory—that is, absent extraordinary circumstances.  *Crown Point*, 319 F.3d at 1215; *accord Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006).
    Nevertheless, abstention "is the exception, not the rule."  *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992); *Joseph A. v. Ingram*, 275 F.3d 1253, 1267 (10th Cir. 2002) (stating that "*Younger* abstention "'is the exception, not the rule.'" (quoting *Ankenbrandt*)).  "It should be 'rarely . . . invoked, because the federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them.'"  *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1232 (10th Cir. 2001) (quoting *Ankenbrandt*, 504 U.S. at 705).

-12-

proceedings when adequate state relief is available.  *Younger*, 401 U.S. at 54.[16]

According to the defendants in this case,

Here the injunctive relief that Plaintiffs seek would interfere with present, ongoing
state criminal prosecutions.  Plaintiffs have not disputed that these are ongoing
state criminal proceedings, that they provide an adequate forum to hear the claims
raised in their complaint, and that they involve important state interests.
Therefore, the Court should abstain from exercising its jurisdiction under the
doctrine of Younger abstention.

* * * *

"Under the *Younger* abstention doctrine, federal courts should not
'interfere with state courts proceedings by granting equitable relief—such as
*injunctions* of important state proceedings or declaratory judgments regarding
constitutional issues in those proceedings—' when a state forum provides an
adequate avenue for relief."  *Weitzel v. Division of Occupational and Professional
Licensing*, 240 F.3d 871, 875 (10th Cir. 1999) (emphasis added).

(Reply Memorandum in Support of Motion to Dismiss for Failure to State a Claim upon

Which Relief May Be Granted and Younger Abstention, filed October 9, 2006 (dkt. no. 9), at 2.)

Yet "[t]he *Younger* abstention doctrine is inapplicable . . . where irreparable injury can be

shown."  *Weitzel v. Div. of Occupational & Professional Licensing*, 240 F.3d at 876.  *Younger*

itself acknowledged that a threat to an individual's federally protected rights constitutes

irreparable injury where the threat "cannot be eliminated by . . . defense against a single criminal

prosecution."  *Younger*, 401 U.S. at 46.

As the Tenth Circuit recently explained,

[I]t is clear that federal intervention is justified where prospective state
prosecutions run afoul of the Double Jeopardy Clause.  This stems from the fact
that the injury to an individual's double jeopardy rights engendered by an
illegitimate successive retrial is no less irreparable simply because the prosecution

---

[16]*See also Perez v. Ledesma*, 401 U.S. 82, 85 (1971) ("Only in cases of proven harassment or prosecutions
undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary
circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions
appropriate.").

comes under the guise of state, rather than federal, authority.  *See Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 303, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984) ("[A] requirement that a defendant run the entire gamut of state procedures, including retrial, prior to consideration of his claim in federal court, would require him to sacrifice one of the protections of the Double Jeopardy Clause.").  Without federal court intervention, Ms. Walck will be forced to "endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense" in violation of her constitutional rights. *Abney*, 431 U.S. at 661, 97 S.Ct. 2034.  And although notions of comity and federalism carry heavy weight in our system of government, such notions do not mean that the federal courts must sit idly by while "the rights conferred on a criminal accused by the Double Jeopardy Clause [are] significantly undermined." *Id.* at 660, 97 S.Ct. 2034.  We therefore hold that *Younger* abstention is unwarranted where a criminal accused presents a colorable claim that a forthcoming second state trial will constitute a violation of her double jeopardy rights.

*Walck v. Edmondson*, 472 F.3d 1227, 1233-34 (10th Cir. 2007).[17]  Here the plaintiffs obviously presented colorable claims that a retrial on the riot charges in the Third District Court retrial *de novo* would violate their rights under the Double Jeopardy Clause.  *Walck* thus proves to be dispositive of the City of Taylorsville's abstention theory, and its motion to dismiss on that ground must be denied.

### Mootness

The defendants have fielded an array of legal defenses, none of which has proven to be

---

[17]*Walck* relies upon *Abney v. United States*, 431 U.S. 651 (1977), in which the Supreme Court elaborated upon the nature of the rights guaranteed by the Double Jeopardy Clause:

> [T]he rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. . . .  [T]his Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense.
> * * * *
> [T]he guarantee's protections would be lost if the accused were forced to "run the gauntlet" a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit.

431 U.S. at 660-61, 662.  As did the *Walck* panel, this court finds the reasoning of *Abney* to be compelling.

dispositive of plaintiffs' primary § 1983 claim.

In the wake of the Utah Court of Appeals' rulings in favor of two of the plaintiffs on the double jeopardy issue, the defendants argue that plaintiffs' § 1983 claims are now moot.

Mootness raises a jurisdictional issue. "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.  To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision."  *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) (citation omitted).  "It is not enough that a plaintiff wishes to have the moral satisfaction of a judicial ruling that he was right and his adversary was wrong; the relief sought must have legal effect in determining the present and future rights and obligations of the parties."  *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1263 (10th Cir. 2004); *see Air Line Pilots Ass'n v. UAL Corp.*, 897 F.2d 1394, 1396 (7th Cir. 1990) (defining the test as whether the relief sought would "make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation)").  Indeed, "past exposure to alleged illegal conduct does not establish a present live controversy if unaccompanied by any continuing present effects."  *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996).

In general a case becomes moot "'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

A claim for "declaratory judgment is generally prospective,"and "claims for prospective relief require a continuing injury."  *PETA v. Rasmussen*, 298 F.3d 1198, 1202 & n.2 (10th Cir.

-15-

2002) (citing *Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1277 (10th Cir.1998)).

"Plaintiffs 'seeking prospective relief must show more than past harm or speculative future

harm.' *Riggs v. City of Albuquerque*, 916 F.2d 582, 586 (10th Cir.1990)." *Lippoldt v. Cole*, 468

F.3d 1204, 1217 (10th Cir. 2006).  Likewise, "[a]s the Supreme Court has explained, '[p]ast

exposure to illegal conduct does not in itself show a present case or controversy regarding

injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *PETA*, 298

F.3d at 1202 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).  "If, while the litigation

is pending, an event occurs that heals the injury, plaintiffs lose their standing for claims for

prospective relief and the claims become moot." *Id.* at 1202-03 (citing *Horstkoetter*, 159 F.3d at

1277).

The question now before this court is whether the Utah Court of Appeals' denial of the

City of Taylorsville's extraordinary writ petitions has "healed the injury" alleged by these

plaintiffs.

Plaintiffs allege that they have interposed pleas of *autrefois acquit* in the state district

court proceedings.[18]

For two of the plaintiffs, David Garn and Mary Jane Auvaa, the state district court had

already determined that trial would not go forward on the riot charges because of the double

_____

[18]At common law,

the plea of auterfoits acquit, or a former acquittal, is grounded on this universal maxim of the common
law of England, that no man is to be brought into jeopardy of his life, more than once, for the same
offence.  And hence it is allowed as a consequence, that when a man is once fairly found not guilty
upon any indictment, or other prosecution, he may plead such acquittal in bar of any subsequent
accusation for the same crime. . . .  And so also was an acquittal on an indictment a good bar to an
appeal, by the common law . . . .

4 William Blackstone, *Commentaries on the Laws of England* *329 (1769).

jeopardy guaranty, and the Utah Court of Appeals declined to interfere with the district court's rulings. As to these two plaintiffs, further prosecution on the riot charges has come to an end, and defendant Lorenzo Miller's attempt to retry them before the district court on the riot charges is "'unaccompanied by any continuing, present adverse effects.'"

Upon inquiry, counsel have advised this court that the riot charges against the other two plaintiffs, Joshua and Teine Auvaa, have not yet been dismissed; nor does any ruling appear on the state district court docket that conclusively determines that a trial *de novo* will not proceed on those charges. Absent such a determination, the question of a double jeopardy violation continues to bear upon whether Joshua or Teine Auvaa will face further prosecution on the riot charges at trial *de novo* in the Third District Court. Plaintiffs' claims for declaratory relief are not moot where this court must determine whether a past constitutional violation occurred which will in turn affect the parties' current rights or future behavior. *See Green v. Branson*, 108 F.3d 1296, 1299-1300 (10th Cir. 1997). Much the same is true of the injunctive relief plaintiffs seek.

Therefore,

**IT IS ORDERED** that the defendant's motion to dismiss (dkt. no. 12) is GRANTED IN PART and plaintiffs' claim against defendants Lohra L. Miller, Miller & Miller Law Offices and the City of Taylorsville shall be DISMISSED; in all other respects, the defendants' motions to dismiss (dkt. nos. 4, 12) are DENIED.

DATED this 17 day of March, 2007.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge

-17-